**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division**

| | |
|---|---|
| DANIEL PEREZ LAZARTE and GERSON AGUILAR DELGADILLO, <br><br>*Plaintiffs*, <br><br>v. <br><br>CHAD WOLF, *in his official capacity as Acting Secretary of the Department of Homeland Security*; KENNETH CUCCINELLI, *in his official capacity as Acting Director of U.S. Citizenship and Immigration Services*; UNITED STATES CITIZENSHIP AND IMMIGRATION SERVICES; UNITED STATES DEPARTMENT OF HOMELAND SECURITY, <br><br>*Defendants*. | Civ. No.: |

**COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF**

**INTRODUCTION**

1.  This suit arises out of an abrupt material change to the Deferred Action for Childhood Arrivals ("DACA") program announced without forewarning on July 28, 2020, whereby DACA renewals—previously authorized for a period of two years—would henceforth only be authorized for a period of one year. *See* Ex. A ("Wolf Memorandum"). As a result of this change, Plaintiffs Daniel Perez Lazarte and Gerson Aguilar Delgadillo, DACA beneficiaries who submitted applications and paid the significant application fee for a two-year DACA renewal prior to the announced change, will only be granted a one-year renewal. As to individuals such as Plaintiffs who already filed their DACA renewal applications prior to the promulgation of the Wolf Memorandum, such a retroactive policy change violates the

Administrative Procedure Act and the Due Process Clause of the Fifth Amendment to the United States Constitution.

## JURISDICTION AND VENUE

2.  This Court has jurisdiction pursuant to 28 U.S.C. § 1331, 28 U.S.C. § 2201(a), and 5 U.S.C. § 702.

3.  Venue is proper in this district pursuant to 28 U.S.C. §§ 1391(b)(2) and 1391(e)(1). A substantial part of the events or omissions giving rise to this action occurred in this district, and both Plaintiffs reside in this district. Defendants in this civil action are officers and agencies of the United States.

## PARTIES

4.  Plaintiff Daniel Perez Lazarte is a 23-year-old resident of Falls Church, Virginia. He was brought to the United States from Bolivia at the age of three, and attended public schools in the Commonwealth of Virginia from kindergarten through obtaining his masters' degree at the University of Virginia in May 2020.

5.  Plaintiff Gerson Aguilar Delgadillo is a 22-year-old resident of Burke, Virginia. He was brought to the United States from Bolivia at the age of two, and attended public schools in the Commonwealth of Virginia starting from kindergarten and currently attends Northern Virginia Community College.

6.  Defendant Chad Wolf is the Acting Secretary of the Department of Homeland Security. He is responsible for overseeing the Department of Homeland Security and is the author of the July 28, 2020 Memorandum that suddenly and without notice shortened the period of DACA renewals to one year, including for those renewals already filed and pending. He is sued in his official capacity.

7. Defendant Kenneth Cuccinelli is the Acting Director of U.S. Citizenship and Immigration Services. He oversees the agency in charge of adjudicating and approving DACA requests and the associated employment authorization requests, and the immigration officers who adjudicate such requests do so as his designees. He is sued in his official capacity.

8. Defendant United States Department of Homeland Security ("DHS") is a department of the executive branch of the United States Government, and is an agency within the meaning of 5 U.S.C. § 552(f)(1).

9. Defendant United States Citizenship and Immigration Services ("USCIS") is the sub-agency of DHS that is responsible for administering DACA, and is an agency within the meaning of 5 U.S.C. § 552(f)(1).

**FACTS**

*The Deferred Action for Childhood Arrivals ("DACA") program*

10. For more than eight years, undocumented immigrants brought to the United States at a young age who fulfilled various other requirements, including an extensive background check, could request a form of deferred action called Deferred Action for Childhood Arrivals ("DACA") that provided them with freedom from fear of arrest and deportation, and with it could receive employment authorization to legally work in the United States. *See generally Dep't of Homeland Sec. v. Regents of the Univ. of Cal.*, 140 S. Ct. 1891 (2020). According to USCIS statistics, more than 9,000 immigrant youth and young adults in Virginia, and more than 600,000 immigrants nationwide, currently rely on DACA and have built their lives around the promises and expectations that the program created.[1]

---

[1] *See* Approximate Active DACA Recipients (March 31, 2020), *available at* https://www.uscis.gov/sites/default/files/document/data/Approximate%20Active%20DACA%20Receipts%20-%20March%2031%2C%202020.pdf.

11. In many states like Virginia, a grant of DACA also allows the beneficiary access to several important state benefits such as the right to a driver's license, *see* Code of Virginia § 46.2-328.1(h).

12. Since the program was created in 2012, grants of deferred action under DACA (and the accompanying employment authorization) were issued for two-year periods, and could be renewed repeatedly provided that the requestor continued to qualify for the program, and submitted the proper paperwork and paid the program application fee, currently $495.

13. In September 2017, then-Acting DHS Secretary Elaine Duke announced without forewarning that she was cancelling DACA. *Regents*, 140 S. Ct. at 1903. Certain DACA beneficiaries would be allowed to renew their DACA for one final two-year period, and no more; others would be allowed to complete their authorized period, but would no longer be allowed to renew. *Id.*

14. Litigation ensued, and various courts enjoined DHS and USCIS from cancelling the DACA program for currently enrolled beneficiaries. *See, e.g.*, *NAACP v. Trump*, 298 F. Supp. 3d 209 (D.D.C. 2018); *Regents of the Univ. of Cal. v. U.S. Dep't of Homeland Sec.*, 279 F. Supp. 3d 1011 (N.D. Cal. 2018); *Batalla Vidal v. Duke*, 295 F. Supp. 3d 127 (E.D.N.Y. 2017). Under these injunctions, USCIS was ordered to continue processing DACA renewals in the same manner that it had done prior to the September 2017 policy change. USCIS complied with these orders, and for the past three years has continued to process two-year DACA renewals for current program participants in the ordinary manner.

15. DACA beneficiaries were encouraged by the government and by community organizations to file their renewal applications far in advance of their DACA expiration dates, to

ensure that their DACA deferred action protection (and accompanying employment authorization) would not lapse while their renewal applications were being processed.

16.  In June 2020, the Supreme Court affirmed the reasoning of the District Courts in the *Regents*, *NAACP*, and *Batalla Vidal* cases, and affirmed the *NAACP* injunction. *Regents*, 140 S. Ct. at 1891. As an initial matter, the Court confirmed that the DACA program, as an affirmative agency action, was subject to the APA. *Id.* at 1906-07. Turning to the merits, the Court found that DHS failed to "defend its actions based on the reasons it gave when it acted" to rescind the DACA program. *Id.* at 1907-10. The Court then held that DHS's action was "arbitrary and capricious" based on two reasons. First, "when an agency rescinds a prior policy its reasoned analysis must consider the 'alternative[s]' that are 'within the ambit of the existing [policy],'" which the agency failed to do. *Id.* at 1913 (alteration in original) (quoting *Motor Vehicle Mfrs. Ass'n of the U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 51 (1983). Second, the Court found that DHS also failed "to assess whether there were reliance interests, determine whether they were significant, and weigh any such interests against competing policy concerns," as required under the APA. *Id.* at 1915; *see also id.* at 1913 ("It would be arbitrary and capricious to ignore such matters." (quoting *FCC v. Fox Television Stations, Inc.*, 556 U.S. 502, 515 (2009)). As the Court explained, "[w]hen an agency changes course, as DHS did here, it must be cognizant that longstanding policies may have engendered serious reliance interests that must be taken into account." *Id.* at 1913 (quoting *Encino Motorcars, LLC* v. *Navarro*, 136 S. Ct. 2117, 2126 (2016) (citation omitted)) (internal quotation marks omitted). Accordingly, the Court vacated DHS's rescission of the DACA program. *Regents*, 140 S. Ct. at 1915, 1916.

17.  After the *Regents* decision in June 2020, Defendants Wolf and Cuccinelli adopted a posture of outright defiance of the Supreme Court. Defendant Cuccinelli issued an official

5

statement decrying the Supreme Court opinion as "an affront to the rule of law[.]" DHS Statement On Supreme Court Decision on DACA (June 18, 2020), *available at* https://www.dhs.gov/news/2020/06/18/dhs-statement-supreme-court-decision-daca. In the same official statement, Defendant Wolf described the Supreme Court opinion as "usurp[ing] the clear authority of the Executive Branch[.]" *Id.*

18. On July 28, 2020, without forewarning, Defendant Wolf issued a memorandum, "Reconsideration of the June 15, 2012 Memorandum Entitled 'Exercising Prosecutorial Discretion with Respect to Individuals Who Came to the United States as Children'" (Ex. A hereto). In defiance and violation of the Supreme Court opinion in *Regents* and the *NAACP* District Court injunction upheld thereby, the Wolf Memorandum makes many changes to the DACA program, which are not challenged in this action.

19. As specifically relevant to this action, the Wolf Memorandum provides: "Accordingly, effective immediately, DHS shall: [. . . .] Limit the period of any deferred action granted pursuant to the DACA policy after the issuance of this memorandum (and thereby limit the period of any associated work authorization) to one year." Ex. A at p.7.

20. This change from two-year DACA validity to one-year DACA validity came without any forewarning, and expressly applied even to those individuals who had already filed and paid the fee for a two-year DACA renewal and were pending adjudication of their renewal requests. *See id.*

### *Plaintiff Daniel Perez Lazarte*

21. Plaintiff Daniel Perez Lazarte (hereinafter "Daniel") is a 23-year-old resident of Falls Church, Virginia. Although he was born in Bolivia in 1996, he entered the United States

with his parents in about 2000, when he was only 3 years old. As a result, the United States is the only home he has ever known.

22.     Daniel has attended public schools in the United States since kindergarten. When he was in high school, he dreamed of going to college. Like many of his classmates, Daniel took the SATs and submitted numerous applications, never realizing at the time that his lack of immigration status would be one of the biggest barriers to achieving his dream. It was only after Daniel received several acceptance letters and he began filling out financial aid applications did he understand that he was ineligible for financial aid and therefore might never be able to obtain a higher education.

23.     In about 2013, however, Daniel received a benefit that changed his life when he was granted DACA status. As a result, Daniel also obtained work authorization from the government, which enabled him to legally work in the United States. Although Daniel was still ineligible for federal financial aid, this enabled him to work and pay for his college education, which would not have been possible had he not received DACA status.

24.     Since 2013, Daniel has consistently and regularly renewed his DACA status as he understands how much it has contributed to both the past and future opportunities in his life. Not only did Daniel graduate from college, but he recently obtained a master's degree in computer science from the University of Virginia. As his ability to find work in this field is contingent upon maintaining DACA status and having a valid employment authorization document ("EAD"), Daniel has continued to be vigilant about filing his renewal applications.

25.     On or about June 23, 2020, Daniel filed his most recent renewal applications for DACA and EAD, paying the renewal fee of $495. USCIS issued him a notice of receipt, and his applications are currently pending.

26. Every time Daniel files renewal applications, he must pay $495. This has been extremely difficult for him, as he has simultaneously been struggling to pay for his higher education for years. Now, he is being threatened with the possibility of having to pay this fee one year earlier than expected. While he is committed to maintaining his DACA status and a valid EAD, this additional fee would be tremendous financial burden on him.

### *Plaintiff Gerson Aguilar Delgadillo*

27. Plaintiff Gerson Aguilar Delgadillo (hereinafter "Gerson") is a 22-year-old resident of Burke, Virginia. He was born in Bolivia, but was brought to the United States by his parents in 2001, when he was only 2 years old. Since then, the United States has been his home, and he has grown up and attended schools here.

28. When Gerson was in high school, he lost all hope and motivation. He did not believe he had a future or any opportunities because he lacked legal immigration status. That all changed in 2013, when Gerson was granted DACA status and work authorization. This benefit not only gave him hope, but allowed him to dream of opportunities he had always thought were beyond his reach. Daniel was so motivated that he even applied and was accepted to Northern Virginia Community College – the first member of his family to attend college – where he is currently pursuing a certificate in architectural drafting.

29. Since first receiving DACA status and work authorization in 2013, Gerson has been vigilant in consistently and regularly filing his renewal applications. He realizes that his future is dependent on maintaining his DACA status and a valid EAD. This is particularly important to him, as he is currently paying his college tuition himself since he is ineligible for financial aid. As a result, Gerson works full-time *and* attends college part-time.

30. On or about June 23, 2020, Gerson filed his most recent renewal applications for DACA and EAD, paying the renewal fee of $495. USCIS issued him a notice of receipt, and his applications are currently pending.

31. Despite his heavy financial burdens, Gerson has always and will always find a way to pay for his DACA and EAD renewal applications. If he is forced to pay an additional $495 for his renewal in 2021 instead of 2022 – as he believed would be the case when he recently filed his applications – this would impose a financial burden on him, particularly as Gerson is already working full-time just to pay for his college tuition.

## CAUSES OF ACTION

### First Cause of Action:
### Administrative Procedure Act, 5 U.S.C. § 706(2)(A)
### Prohibition on Arbitrary and Capricious Action

32. Plaintiffs incorporate by reference the allegations set forth above.

33. Defendants DHS and USCIS are agencies subject to the Administrative Procedure Act, 5 U.S.C. §§ 551(1), 703. Defendants Wolf and Cuccinelli are the chief officers of those agencies.

34. The Wolf Memorandum is a final agency action subject to judicial review because it is a legislative rule. *See* 5 U.S.C. § 704; *Regents*, 140 S. Ct. at 1906-07; *see also Nat'l Mining Ass'n v. McCarthy*, 758 F.3d 243, 251 (D.C. Cir. 2014) (explaining "[a]n agency action that purports to impose legally binding obligations or prohibitions on regulated parties . . . is a legislative rule.").

35. Agency action must not be "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A).

36. Based on the Defendants' administration of DACA prior to the Wolf Memorandum, Plaintiffs had a reasonable expectation that by filing and paying the fee for a DACA renewal on June 23, 2020, they would be eligible to receive a two-year extension of their DACA deferred action and of their employment authorization, and Plaintiffs acted in reliance on that expectation.

37. By retroactively applying a rule change to the DACA program (specifically, reducing the period of DACA validity from two years to one year) to those DACA renewal requestors like Plaintiffs who have already filed and paid the fee for renewal applications prior to the effective date of the Wolf Memorandum, Defendants have acted arbitrarily and capriciously, in violation of the Administrative Procedure Act, to the injury of Plaintiffs.

**Second Cause of Action:**
**Administrative Procedure Act, 5 U.S.C. § 706(2)(A), (C)**
**Prohibition on Unlawful Action**

38. Plaintiffs incorporate by reference the allegations set forth above.

39. The APA requires courts "to hold unlawful and set aside agency action, findings, and conclusions found to be . . . not in accordance with law."  5 U.S.C. § 706(2)(A).

40. The APA further requires courts to "to hold unlawful and set aside agency action, findings, and conclusions found to be . . . in excess of statutory jurisdiction, authority, or limitations, or short of statutory right."  5 U.S.C. § 706(2)(C).

41.  Based on the Defendants' administration of DACA prior to the Wolf Memorandum, Plaintiffs had a reasonable expectation that by filing and paying the fee for a DACA renewal on June 23, 2020, they would be eligible to receive a two-year extension of their DACA deferred action and of their employment authorization, and Plaintiffs acted in reliance on that expectation.

42. By retroactively applying a rule change to the DACA program (specifically, reducing the period of DACA validity from two years to one year) to those DACA renewal requestors like Plaintiffs who have already filed and paid the fee for renewal applications prior to the effective date of the Wolf Memorandum, Defendants have acted *ultra vires* and contrary to law, in violation of the Administrative Procedure Act, to the injury of Plaintiffs.

**Third Cause of Action:**
**Due Process Clause of the Fifth Amendment to the U.S. Constitution**

43. Plaintiffs incorporate by reference the allegations set forth above.

44. The Due Process clause of the Constitution protects all persons who are physically present in the United States, and dictates that "[n]o person shall . . . be deprived of life, liberty, or property, without due process of law." Plaintiffs have spent most of their lives (and all of their formal education) in the United States, and are therefore a "person" within the meaning of the Due Process Clause.

45. DACA conferred legitimate claims of entitlement to benefits including employment authorization, thus giving rise to protected property interests.

46. DACA prevented individuals from being arrested and deported, thus giving rise to a protected liberty interest.

47. Based on the Defendants' administration of DACA prior to the Wolf Memorandum, Plaintiffs had a reasonable expectation that by filing and paying the fee for a DACA renewal on June 23, 2020, they would be eligible to receive a two-year extension of their DACA deferred action and of their employment authorization, and Plaintiffs acted in reliance on that expectation.

48. By retroactively applying a rule change to the DACA program (specifically, reducing the period of DACA validity from two years to one year) to those DACA renewal

requestors like Plaintiffs who have already filed and paid the fee for renewal applications prior to the effective date of the Wolf Memorandum, Defendants have deprived Plaintiffs of their constitutionally protected property and liberty interests, in violation of the Due Process Clause, to Plaintiffs' injury.

## RELIEF REQUESTED

WHEREFORE, Plaintiffs respectfully request that this Court provide the following relief:

1. Declare the application of the Wolf Memorandum to those individuals who had already filed and paid the fee for a DACA renewal application prior to its promulgation, including Plaintiffs, to have been "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law" and "in excess of statutory jurisdiction, authority, or limitations, or short of statutory right" under 5 U.S.C. § 706(2)(A) and (C), and set it aside;

2. Declare the application of the Wolf Memorandum to those individuals who had already filed and paid the fee for a DACA renewal application prior to its promulgation, including Plaintiffs, to have a deprivation of constitutionally-protected property and liberty interests, in violation of the Due Process clause, and enjoin it;

3. Enjoin Defendants, their agents, servants, employees, attorneys, and all persons in active concert or participation with any of them, from implementing or enforcing the Wolf Memorandum as to those individuals who had already filed and paid the fee for a DACA renewal application prior to its promulgation, including Plaintiffs;

4. Order Defendants to adjudicate the renewal application of those individuals who had already filed and paid the fee for a DACA renewal application prior to its promulgation,

including Plaintiffs, without regards to the Wolf Memorandum or any policies implementing the same;

5. Award Plaintiffs theirs costs and reasonable attorney's fees pursuant to the Equal Access to Justice Act; and

6. Any other relief this Court deems just and proper.


Dated: August 6, 2020				Respectfully submitted,


				_____//s//_____
				Jennifer Kwon (VSB No. 71175)
				*jennifer@justice4all.org*
				Astrid Lockwood (pro hac vice pending)
				*astrid@justice4all.org*
				Simon Sandoval-Moshenberg (VSB No. 77110)
				*simon@justice4all.org*
				LEGAL AID JUSTICE CENTER
				6066 Leesburg Pike, Suite 520
				Falls Church, VA 22041
				Tel: (703) 720-5605
				Fax: (703) 778-3454

				*Counsel for Plaintiffs*